UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | Case No. 3:17-CR-167 |
| v. | ) | JUDGE TRAUGER |
| | ) | |
| HOMERO QUINTANILLA NAVARRO | ) | |

DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Homero Quintanilla Navarro (Quintanilla), age 40, has served almost three years of ten-year sentence for trafficking cocaine and for illegally reentering the county. Quintanilla has diabetes, high blood pressure, and liver problems, and he is obese. He is confined at Oakdale FCI, which is the federal prison with the sixth highest number of known Covid-19 cases. On about April 18, 2020, he submitteda request for his release to the Warden due to the Covid-19 crisis.

Quintanilla respectfully moves this Court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i), which allows such a reduction based on "extraordinary and compelling reasons." Since he is at high risk of severe harm from Covid-19, he asks that this Court to reduce his sentence by ordering his immediate release, which would trigger his deportation to Mexico.

I.  Statutory framework for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i)

The compassionate release statute grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides:

(1) in any case--

1

(A) **the court**, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, **may reduce the term of imprisonment** (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--**

 (i) **extraordinary and compelling reasons warrant such a reduction**; . . .

\*\*\*\*\*

**and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission**.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

The commentary to the Sentencing Commission policy statement identifies some reasons that typically amount to "extraordinary and compelling reasons for a sentence reduction," including:

> (A) Medical Condition of the Defendant.—
>  (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). . . .
>  (ii) The defendant is—
>   (I) suffering from a serious physical or medical condition,
>   (II) suffering from a serious functional or cognitive impairment,
> or
>   (III) experiencing deteriorating physical or mental health because of the aging process
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, comment. n.1(A). In addition, the commentary advises that "Other Reasons" can also suffice in Note 1(D).

Thus, the statutory requirements for sentence reduction are that the court: (1) find extraordinary and compelling reasons for the reduction; (2) consider the relevant sentencing factors under 18 U.S.C. § 3553(a); and (3) ensure any reduction is consistent with applicable policy statements. 18 U.S.C. § 3582(c)(1)(A).

II. Statement of facts

    A. Background and underlying offense

In May 1979, Quintanilla was born in the border town of Nuevo Laredo, Mexico. (Presentence Report (PSR) at 2.) He attended school through third grade. (*Id.*) At age 14, he moved across the border to Laredo, Texas where he lived with his grandmother. (*Id.* at 17.) It appears that, about a decade later, he was deported to Mexico for the first time, and then was deported several times thereafter. (*Id.* at 6.)

He eventually resettled in Nashville, and although he had several convictions for misdemeanors such as driving under the influence and illegal reentry, he did not get in serious legal trouble until arrested on August 5, 2017, for selling ten kilograms of cocaine to an informant. (PSR at 2, 7, 12-13.) On October 30, 2017, he pled guilty to a binding deal for the statutory minimum sentence of 10 years. (*Id.* at 5-6.) This Court imposed that sentence in January 2018. (Judgment, Docket Entry 27.)

    B. Medical condition

As reported in his presentence report, Quintanilla, who is 5' 2" and 250 pounds, has diabetes and high-blood pressure. (PSR at 2, 18.) He also reports that

he has high cholesterol and has suffered liver damage, which would be consistent with his numerous arrests for driving under the influence of alcohol. (Ex. 1, Administrative Request.)

These conditions put Navarro at high risk for suffering severe consequences from Covid-19. According to the Center for Disease Control (CDC), people who have underlying conditions like diabetes, high-blood pressure, and obesity are especially vulnerable to and at higher risk for serious complications from Covid-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications/older-adults.html. (*See also* Ex. 2, Franco-Paredes Dec. at 2-3.)

### C. Conditions in the prison where he is confined

Navarro is housed at Oakdale FCI. As of yesterday, that prison has the sixth highest number of known Covid-19 cases amongst inmates in BOP prisons.[1] It reports 91 active cases and 86 former cases amongst its roughly 1,000 inmates, which means that about 20% of inmates have certainly been infected. *Id.* These figures reports only the known cases within the prison; it is likely the actual figure is much higher. *See Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020) (noting that at FCI Elkton, one of the hardest-hit facilities, "it is unlikely that [the BOP's] figures represent the actual number of cases at the institution, given the paltry number of tests the federal government has made available for the testing of Elkton's inmates"); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020) ("Zero *confirmed*

---

[1] https://www.bop.gov/coronavirus/.

COVID-19 cases is not the same thing as zero COVID-19 cases.") (emphasis in original).

It is likely that the Covid-19 virus will spread even more extensively now that it is clearly present in the prison. *United States v. Rodriguez,* 2020 U.S. Dist. LEXIS 58718, *23 (E.D. Pa. Apr. 1, 2020) (discussing BOP's inadequate response to Covid-19); (Ex. 3, Venters Dec. (epidemiologist who inspected BOP prison reports that the prison was seriously deviating from norms and that it was even destroying medical records).) For example, in the case of Fort Worth FMC, the virus inundated the prison in less than a month. As of April 14, Fort Worth FMC had just one known case; by April 26, it had 262 known cases; by May 13 it had 622 cases.[2] In one month, the rate of infection went from 1:1,500 to more than 1:3. Oakdale FCI may be on the same trajectory as Forth Worth FMC, putting Quintanilla at an increasingly greater risk.

### D. Efforts to gain relief from the Bureau of Prisons

On April 18, 2020, Quintanilla submitted a written request to his Warden for compassionate release in light of his medical condition and the Covid-19 pandemic. (Ex. 1, Administrative Request.)

---

[2] In *United States v. Charles Edwards,* No. 3:13-cr-12 (M.D. Tenn.), the defendant Edwards filed for Covid-19-based compassionate release on April 14, 2020, and at that time his prison of 1,500 inmates (FMC Fort Worth) had just one inmate who had tested positive for the virus. (No. 3:13-cr-12, Motion, R.475, PageID# 2110 (citing BOP website).) By April 26, his prison had 232 inmates who tested positive for the virus. (No. 3:13-cr-12, Notice, R.479, PageID# 2175 (citing BOP website).) On May 13, there were 622 cases according to the BOP website.

### E. Release plan

Quintanilla asks to be deported if he were released, and he would return to family in Mexico. (Letter, R.32, PageID# 104.)

### III. Argument

#### A. The 30-day waiting period is satisfied.

The statute says a district court can grant a defendant's compassionate-release motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Quintanilla submitted his written requests for compassionate release on April 18, 2020, which is more than 30 days ago, and the BOP has not endorsed his filing of a compassionate-release motion. (*See* Section II.D, *supra*.) Thus, the 30-day waiting period is satisfied.

#### B. Quintanilla suffers from a serious physical or medical condition that amounts to an extraordinary and compelling reason to reduce his sentence.

A district court can reduce a final sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Under the old policy statement, "extraordinary and compelling reasons" to reduce a sentence include a defendant who is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the

defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). Mr. Jones's condition meets this standard because his longstanding hypertension, high cholesterol, and history of heart surgery, render him unable to care for himself or protect himself from Covid-19 while in the custody of the BOP.

The government acknowledges that an individual's health conditions, combined with the threat posed by the Covid-19 pandemic, can constitute extraordinary or compelling reasons under § 1B1.13 cmt. n.1(A)(ii). *See e.g., United States v. Charles Edwards,* No. 3:13-cr-12 (M.D. Tenn.), Gov't Response, R.493, PageID# 2767 (expressly confirming the government agrees that "[a] chronic condition such as diabetes may satisfy the "extraordinary and compelling" standard under Application Note 1(A)(ii)(I) of U.S.S.G. § 1B1.13, when coupled with a COVID-19 outbreak at a federal BOP facility"); *United States v. Charles Irby,* M.D. Tenn. No. 3:17-cr-70, R. 31, PageID# 159 ("If an inmate shows that he has a serious, chronic condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition could potentially satisfy the standard of 'extraordinary and compelling reasons.' Under these circumstances, considering the totality of the circumstances, a chronic condition (*i.e.,* one 'from which [the defendant] is not expected to recover') could reasonably be found to be 'serious' and to 'substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility,' even if that condition would

not have constituted an 'extraordinary and compelling reason' absent the risk of COVID-19."))

Even before the Covid-19 pandemic, Quintanilla was "suffering from [] serious physical or medical condition[s]" from which he will not recover, and those conditions "substantially diminish[]" his ability to provide self-care in his prison. U.S.S.G. § 1B1.13, appl. n. 1(A)(ii). Quintanilla still suffers from these serious medical conditions, as discussed in Section II.B, *supra*.

Further, Quintanilla cannot provide self-care and protect himself from Covid-19 while in custody. He is housed at Oakdale FCI, which, as explained in Section II.C, *supra*, is a facility that is inundated with Covid-19.

With his serious medical conditions and the threat of Covid-19, Quintanilla cannot care for himself safely in his prison environment. Courts have found that the risk of Covid-19, combined with an individual's high-risk health factors, satisfy the language of Application Note 1(A). *See, e.g., United States v. Compagna*, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [] Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC") (citing U.S.S.G. § 1B1.13, Application Note 1(A)); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *5 (E.D. Mich. May 7, 2020) ("many courts have found that, for high risk individuals, communal prison confinement conditions satisfy the

definition of 'extraordinary and compelling reason for release' because they make it impossible for vulnerable individuals to 'protect [them]selves from the spread of a dangerous and highly contagious virus'"); *United States v. Muniz,* 2020 U.S. Dist. LEXIS 59255, *3-4 (S.D. Tex. Mar. 30, 2020).

This Court should immediately reduce Quintanilla's sentence on the grounds that he is suffering from a serious medical condition that has substantially diminished his ability to provide self-care against the risk of Covid-19 within his prison environment.

### C. Quintanilla's high risk of serious health consequences due to Covid-19 amounts to an extraordinary and compelling reason other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A). This further necessitates reduction of his sentence.

Quintanilla's risk of complications or death from Covid-19, coupled with the extraordinary nature of the pandemic, also give this Court authority to grant his motion pursuant to Note 1(D). In addition to the reasons listed in the policy statement as listed above, the commentary in Note 1(D) advises that "Other Reasons" can also suffice. Although Note 1(D) is written such that the BOP would have to pre-approve any such "other reason," such BOP approval is now inconsistent with the text of § 3582(c)(1)(A) as modified by First Step Act because the Act expressly took from the BOP any gatekeeping role. Thus, in the wake of the First Step Act, a district court now has the authority to determine for itself, without BOP approval, what amounts to any other "extraordinary and compelling reason" under the statute. *See, e.g., United States v. Young*, 2020 U.S. Dist. LEXIS 37395, *16-17

9

(M.D. Tenn. Mar. 4, 2020) (so holding);[3] *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019); *United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, *3 (D. Me. July 11, 2019); *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." (internal quotation marks omitted)).

Exercising this new authority, several courts have held that the especially high risk of Covid-19 complications to a prisoner can constitute "other reasons providing an extraordinary and compelling reason for compassionate release. *See, e.g., United States v. Gonzalez,* 2020 U.S. Dist. LEXIS 56422, *9-10 (E.D. Wash. Mar. 31, 2020); *United States v. Rodriguez,* 2020 U.S. Dist. LEXIS 58718, *5 (E.D. Pa. Apr. 1, 2020); *United States v. McCarthy*, 2020 U.S. Dist. LEXIS 61759, *13-14 (D. Conn. Apr. 8, 2020). The courts so finding have emphasized that Covid-19 is bound to spread through BOP facilities, that inmates are powerless to adequately protect themselves from Covid-19, and that a high-risk inmate could suffer "profound" health consequences while, depending on the circumstances, the value of

---

[3] This order was modified on April 13, 2020, by removing one phrase that indicated the government conceded this point.

extracting the full custodial punishment from the inmate may be "marginal." *Rodriguez*, 2020 U.S. Dist. LEXIS 58718 at \*26; *see United States v. Perez,* 2020 WL 1546422, \*2 (S.D.N.Y. Apr. 1, 2020) (following similar reasoning).

Courts have so held even in cases where the defendant has as substantial amount of time left to serve on the sentence, *see, e.g., United States v. Hansen*, 2020 U.S. Dist. LEXIS 61946 (E.D.N.Y. April 8, 2020) (granting release 11 years into a 20-year sentence); *United States v. Bess*, Case No. 1:16-cr-156, 2020 U.S. Dist. LEXIS 71056 (W.D.N.Y. Apr. 22, 2020) (granting release 41 months into an 84-month sentence), or when victims of a crime oppose release, *see, e.g., United States v. Park*, No. 16-CR-473 (RA), 2020 WL 1970603, at \*6 (S.D.N.Y. Apr. 24, 2020) ("in light of the gravity of her conduct, Ms. Park deserves to spend every day of the sentence that she received in prison. But as other judges across this country have rightly noted, 'we are not currently living under normal circumstances.'").

Quintanilla's risk of suffering serious and irreparable consequences to his health are especially high because of his medical condition described in Section II.B, *supra.* Quintanilla's medical vulnerability exposes him to an unacceptably high risk of contracting COVID-19 and becoming seriously ill or dying. This Court should conclude that the fact that Quintanilla faces this risk constitutes an extraordinary and compelling reason for compassionate release.

11
Case 3:17-cr-00167   Document 36   Filed 05/23/20   Page 11 of 13 PageID #: 122

**D. Under § 3553(a), the Court should release Quintanilla and possibly require him to serve a period in home confinement.**

Where, as here, extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i).

Quintanilla has served almost three years of a ten-year sentence for trafficking cocaine and illegal reentry to this county. If released, Quintanilla would be deported to Mexico where he would live with family.

In sum, Quintanilla respectfully requests that the Court reduce his sentence to time served, possibly to be followed by a period of home detention. *United States v. Perez,* 2020 WL 1546422, *2 (S.D.N.Y. Apr. 1, 2020) ("The benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave."); *Rodriguez,* 2020 U.S. Dist. LEXIS 58718 at *26 (following similar logic). Such a sentence would reflect the seriousness of his offense, would adequately serve the need for deterrence, and it would likewise serve the purposes of further promoting his rehabilitation.

**IV. Conclusion**

Homero Quintanilla respectfully asks that the Court, acting pursuant to either Note 1(A) or 1(D) of U.S.S.G. § 1B1.13, reduce his custodial sentence to time served. He also asks that the Court order the government to respond to this motion in an expedited manner and that the government ensure that all recent BOP medical records are produced.

Respectfully submitted,

s/ *Michael C. Holley*
MICHAEL C. HOLLEY
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2020, I electronically filed this pleading with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to Amanda Klopf, Assistant United States Attorney, Office of the U.S. Attorney, 110 Ninth Avenue North, Suite A961, Nashville, Tennessee, 37203.

s/ *Michael C. Holley*
MICHAEL C. HOLLEY